Appeal No. 13-2176

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

NEAL GREENBAUM, *et al.*,  )
    Plaintiffs,  )
       )
ROBERT TORCH,  )
    Plaintiff-Intervenor,  )
       )
GIANT CAB COMPANY, Inc.,  )
    Plaintiff-Intervenor-Appellee,  )
       )
AMY BAILEY, *et al.,*  )
    Defendants  )
       )
THE COMMITTEE TO ELECT PETE DINELLI  )
    Defendant-Intervenor-Appellant.  )

---

## ANSWER BRIEF OF APPELLEE

---

Appeal from the United States District Court for the District of New Mexico The
Honorable M. Christina Armijo
United States District Court No. 1:13-cv-2176-MCA-ACT

---

## ORAL ARGUMENT NOT REQUESTED

---

Colin Hunter
Al Park
Jason Bowles
1905 Wyoming Blvd NE
Albuquerque, NM 87112
(505) 275-3200
colin@theblf.com
*Attorneys for Appellee Giant Cab*

## CORPORATE DISCLOSURE

Giant Cab, a corporation, has no parent corporation and is a non-stock corporation, so no publicly held company owns 10 percent or more of its stock.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE ……………………………………………………1

TABLE OF CONTENTS…………………………………………………………..2

TABLE OF AUTHORITIES…………………………………………………….3

STATEMENT OF PRIOR OR RELATED APPEALS……………………………4

STATEMENT OF THE CASE……………………………………………………5

STATEMENT OF JURISDICTION…………………………………………..4,5

PROCEDURAL BACKGROUND…………………………………………5,6,7

STATEMENT OF FACTS……………………………………………………7

ARGUMENT…………………………………………..11,12,13,14,15,16,17,18,19,20

CONCLUSION……………………………………………………………...21

STATEMENT REGARDING ORAL ARGUMENT……………………………21

CERTIFICATE OF SERVICE……………………………………………………22

CERTIFICATE OF COMPLIANCE…………………………………………...23

## TABLE OF AUTHORITIES

**Cases**

*Alvarez v. Smith*, 130 S. Ct. 576, 580 (2009)………………………………………...6

*Buckley v. Valeo*, 424 U.S. 1 (1976)………………………………………………...16

*Citizens for Clean Gov't v. City of San Diego*, 474 F.3d 647 (9th Cir. 2007)……14

*Citizens United v. FEC*, 558 U.S. 310 (2010)………………………13,15,16,17,19

*Constitution Party of Kan. v. Kobach*, 695 F.3d 1140, 1144 (10th Cir. 2012)…...11

*Green Party of Conn. v. Garfield*, 648 F. Supp. 2d 298 (D. Conn. 2009)….17,18,19

*Hollingsworth v. Perry*, 570 U.S.,____ (slip op.)(2013)………………………….5

*Lavin v. Jon Husted*, 689 F.3d 543 (6th Cir. 2012)………………………………17

*Nixon v. Shrink Missouri Gov't PAC*, 528 U.S.377, 391 (2000)…………………13

*Riddle, et al. v. Hickenlooper*, et al., No. 13-1108 (10th Cir. Jan. 23, 2014)……..12

*United States v. Danielczyk*, 683 F.3d 611, 616 (4th Cir. 2012)…………………13

**Constitutions, Statutes, Regulations & Rules**

Article XIII, § 4(f) of the Albuquerque City Charter…………4,5,6,7,8,14,15,20,21

U.S. Const. Article III, § 2…………………………………………………………5

U.S. Const. amend I……………………………………………………4,5,6,21

U.S. Const. amend XIV………………………………………………………4

## STATEMENT OF PRIOR OR RELATED APPEALS

No other appeal in or from the same civil action in the lower court was previously before this or any other appellate court under the same or a similar title. Additionally, no cases are known to counsel to be pending in this or any other court that will directly affect this Court's decision in the pending appeal.

## STATEMENT OF THE CASE

Plaintiff -Intervenor-Appellee Giant Cab Company brought a First Amendment and Equal Protection challenge in the district court against the clerk of the City of Albuquerque, seeking a declaration that Article XIII, § 4(f) of the Albuquerque City Charter was unconstitutional as applied to Giant Cab.[1] The district court agreed and held the statute unconstitutional as applied to Giant Cab. This appeal followed.

## STATEMENT OF JURISDICTION

Giant Cab disputes that this Court has jurisdiction over the instant lawsuit. Pending before this Court is a motion to dismiss on grounds that Intervenor-Appellant The Committee to Elect Pete Dinelli Mayor, lacks standing to seek to uphold the city ordinance at issue in this case. Appellant Pete Dinelli appeals from the District Court's September 4, 2013 order declaring that Albuquerque's ban on campaign contributions from business corporations violates the First Amendment

---

[1] Plaintiffs Neal Greenbaum, Victor Jury, Gail Armstrong, Dale Armstrong, and Plaintiff in-Intervention Robert Torch were all dismissed from this action for want of Article III standing.

4

of United States Constitution. City Defendants did not appeal. The appeal suffers

from two fatal procedural defects: there is no standing and the issue is moot. Since

an Article III, § 2 "Case" or "Controversy" does not exist between the parties, this

Court does not have jurisdiction and the appeal should be dismissed.  In a case

with similar procedural facts, the Supreme Court recently held that proponents of

California's ban on same-sex marriage did not have standing to appeal the district

court's order invalidating the ban. *Hollingsworth v. Perry,* 570  U.S.___(2013)

(slip op., at 17). Under *Hollingsworth,* a private party such as Appellant Pete

Dinelli does not have standing to defend the constitutionality of a law when the

state has chosen not to further challenge a District Court's ruling. *Id.* This appeal

became moot when Appellant Pete Dinelli was defeated in the Albuquerque

Municipal Election on October 8, 2013. Standing and mootness are jurisdictional;

thus, they can be raised at any time. *Alvarez v. Smith*, 130 S. Ct. 576, 580 (2009).

Appellee Giant Cab filed a timely motion to dismiss in compliance with 10th Cir.

R. 27.2 (A)(3)(a). The motion to dismiss would resolve all claims in this appeal if

granted.

## PROCEDURAL BACKGROUND

This is a Section 1983 First Amendment and Equal Protection challenge to

Article XIII § 4 (f) of the Albuquerque City Charter ("§ 4(f)") that provides:

*No candidate shall accept a contribution in support of the candidate's campaign from any corporation, limited liability company, firm, partnership, joint stock company or similar business entity or any agent making a contribution on behalf of such a business entity. No candidate shall accept a contribution in support of the candidate's campaign from any person, other than a City employee, who at the time of the contribution is in a contractual relationship with the City to provide goods or services to the City. § 4 (f).*

Plaintiffs Neal Greenbaum, Victor Jury, Dale Armstrong, and Gail Armstrong ("Individual Plaintiffs") filed a Complaint challenging the § 4(f) contractor contribution ban. Complaint for Civil Rights Violations Seeking Declaratory and Injunctive Relief dated 5/6/13, document number 1. Appellee Giant Cab sought and was granted permission to file a Complaint-in-Intervention challenging the § 4(f) corporate contribution ban. Motion dated 6/3/2013, document number 17. The District Court further granted Appellant Pete Dinelli's motion to intervene as a Defendant. Order dated 5/10/2013, document number 9. The District Court also granted New Mexico Attorney General Gary King's request to file an *amicus curie* brief defending the constitutionality of § 4(f). Order dated 6/28/13, document number 39.

Individual Plaintiffs and Plaintiff-in-Intervention Appellee Giant Cab filed a joint motion for injunctive and declaratory relief requesting that the City Defendants be enjoined from enforcing the § 4(f)'s corporate and contractor contribution ban. Motion dated 6/17/2013, document number 24. The District

Court *sua sponte* dismissed the Individual Plaintiffs for want of Article III standing, concluding the contractor ban was only applicable to contributions from businesses in a contractual relationship with the City, not to individuals with an interest in such a business, leaving Appellee Giant Cab as the sole Plaintiff. Order dated 8/19/2013, document number 68.

On September 4, 2013 the District Court held that Albuquerque's ban on campaign contributions from business corporations violates the First Amendment of United States Constitution. Judgment dated 9/4/2013, document number 70. Appellant Pete Dinelli filed a timely notice of appeal. Notice of Appeal dated 10/3/2013, document number 72.  City Defendants did not.

## STATEMENT OF FACTS

Giant Cab generally objects to Appellee Dinelli's "Statement of Facts" section, pages 5-8 of Appellee's brief.  There is not a single citation to any "fact" cited by Dinelli and the "fact section" appears more argument from one of the councilors that proffered its adoption.[2]  Moreover, Judge Armijo, United States District Court for New Mexico, made a detailed series of fact findings after considering all of the evidence.  Judge Armijo found the following facts:

1. Article XIII, § 4(f) of the Albuquerque City Charter provides:

---

[2] Attorney for Dinelli, Mr. Cadigan, then a city councilors, was the sponsor of the ordinance at issue.

*Ban on Contributions from Business Entities and City Contractors.*

[1]No candidate shall accept a contribution in support of the candidate's campaign from any corporation, limited liability company, firm, partnership, joint stock company or similar business entity or any agent making a contribution on behalf of such a business entity. [2] No candidate shall accept a contribution in support of the candidate's campaign from any person, other than a City employee, who at the time of the contribution is in a contractual relationship with the City to provide goods or services to the City. The remedy for an unknowing violation of this subsection shall be the return of the contribution.

2. Pursuant to Article II, § 2, mayoral elections are held every four years. Mayoral elections were held in 2001, 2005 and 2009. A mayoral election will be held in October, 2013.

3. Giant Cab is a corporation doing business in New Mexico; Giant Cab does not have any contracts with the City.

4. Giant Cab made a contribution to Janice Arnold Jones for City Council, but that donation was returned. Giant Cab desires to make campaign contributions in Albuquerque municipal elections, and would do so but for § 4(f).

5. Defendant Amy Bailey is sued in her official capacity as Albuquerque City Clerk.  Her office administers City elections, is the repository of various campaign finance statements required by Article XIII, and otherwise assists the Board of Ethics and Campaign Practices in administering Article XIII.

6. The Board of Ethics and Campaign Practices ("the Board") is responsible for enforcing the provisions of Article XIII.

7. Article XIII, § 4(e) allows individuals to contribute to a candidate up to 5% of the annual salary for the office for which the candidate is running.

8. Candidates who violate the contribution restrictions of § 4(f) are subject to a public reprimand, a fine, or both. Article XIII § 10(e). Candidates who are successful in an election and who have violated this provision may be

8

further sanctioned by suspension or removal from office. Article XIII §
10(g).

9. Former Albuquerque Mayor Martin Chavez was publically reprimanded
in 2003 by the Board for accepting valuable gifts from those with an interest
in city affairs, failing to report certain campaign contributions and failing to
abide by contribution limits. The inquiry leading to the reprimand and the
reprimand itself were reported in the *Albuquerque Journal*.

10. In 2005, former State Treasurer Robert Vigil was indicted on federal
extortion charges; *United States v. Vigil*, Crim. No. 05-2051 JP.

11. A procurement scandal surrounding the construction of the Bernalillo
County Metropolitan Courthouse in Albuquerque led to the indictment state
Senator Manny Aragon and others. ; *United States v. Martinez,* et al., Crim.
No. 07-615 JEC (D. N.M.). Former Albuquerque Mayer Ken Schultz was
implicated in the scandal. *United States v. Schultz*, Crim. No. 07-518 JEC
(D. N.M.).

12. It is more likely than not that all the members of the City Council, and
substantial numbers of Albuquerque voters, knew of the circumstances set
out in the preceding three paragraphs, as these events were widely reported
by the local media.

13. During the February 5, 2007 City Council meeting at which § 4(f) was
placed on the ballot, its sponsor, Councilor Michael Cadigan, represented to
the City Council that the purpose of the provisions banning corporate
campaign contributions was to "match federal law." Councilor Cadigan
represented that the purpose of the provision banning contributions by city
contractors was to remove the perception of "pay to play." City Attorney
Robert White was present and spoke to First Amendment concerns presented
by the city contractor ban. Councillor Cadigan observed that the entity and
city contractor bans overlapped as most contractors would be covered by the
entity contribution ban. Councilor Martin Heinrich spoke to the interests of
eliminating the public perception of "pay to play" politics and preventing
circumvention of the individual campaign contribution limits through
"double dipping." The City concedes that "no City Councilor voiced any
concern regarding actual 'pay to play' corruption; rather, the debate centered
on the appearance of impropriety." The City Counsel voted in favor of
placing the proposed amendment before the voters.

14. The amendment containing § 4(f) was submitted to the voters on the Regular Municipal Election Ballot of October 2, 2007. Approximately seventy-two per cent of the voters voted in favor of the amendment.

15. Other than the passing comments by the City Council members referred to above, the Court has not been presented with any legislative history of § 4(f). There are no findings by the City Council. There is no evidence proffered that the City actually investigated the relationship of corporate campaign contributions to *quid pro quo* corruption or the circumvention of individual contribution limits or that the City Council conducted studies or surveys of voter concerns with corporate campaign contributions. There was no discussion of why an absolute ban on corporate contributions, rather than a contribution limit, was appropriate.

16. There are no references in the record to evidence developed by other jurisdictions that the City Council "reasonably believed to be relevant" to the problem of *quid pro quo* corruption or the appearance of such corruption in Albuquerque municipal elections. *See Homans v. City of Albuquerque*, 366 F.3d 900 (10th Cir. 2004) (citing *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51-52 (1986)).

17. There is no evidence proffered that the City Council, prior to enacting the resolution placing § 4(f) on the ballot, considered objective evidence of the extent of participation by business corporations in "pay to play" schemes or the use by individuals of the corporate form to circumvent individual contributions limits.

18. The Court has noted the overwhelming support for the amendment containing § 4(f) among voters, but the Court has no way of knowing why these voters approved the amendment containing § 4(f). The Court cannot determine whether they were motivated by the constitutionally permissible interest in eliminating or reducing *quid pro quo* corruption, or the appearance of such corruption, as opposed to the constitutionally infirm desire to single out corporate political speech for less favorable treatment based on the speaker's corporate identity.

19. Article XIII, § 4(d) provides that a candidates for the offices of City Councilor and Mayor may not accept contributions in excess of twice the annual salary for the office sought. Given the salaries authorized at the time

that the City Council was considering placing Article XIII, § 4(f) on the ballot, individual campaign contributions were limited to maximums of $450 per election per candidate for City Council and $4500 per election per candidate for mayor.

20. Prior to the enactment of Article XIII, § 4(f), combined contributions by an individual and an affiliated corporation rarely, if ever, exceeded the individual contribution limits described in the preceding paragraph.

Order dated 9/04/2013, document number 69.

## ARGUMENT

*Standard of Review*

The district court analyzed whether the City ordinance at issue was "'closely drawn to achieve a 'sufficiently important' government interest.'" Order dated 9/04/2013, document number 69. This Court reviews the district court's findings of fact for clear error. Challenges to the constitutionality of a statute are reviewed de novo. *Constitution Party of Kan. v. Kobach*, 695 F.3d 1140, 1144 (10th Cir. 2012).

This Court recently struck down an individual campaign contribution limit, imposed by the State of Colorado, that impermissibly distinguished between major parties (Republican and Democrat) and minor parties, in violation of the Fourteenth Amendment's Equal Protection Clause. *Riddle, et al. v. Hickenlooper, et al.*, No. 13-1108 (10th Cir. Jan. 23, 2014). There, Colorado had passed a statute in 2004, which in conjunction with a constitutional amendment, the Secretary of State had read to allow major party candidates to receive up to $400 in

11

contributions from a single individual, which the candidate could use in the general election.  In contrast, the statute effectively restricted minor party candidates to a cap of $200 from a single individual for contributions, which could be used in the general election.

This Court determined that this disparity in treatment impinged on a fundamental right, that is, the right to contribute as a form of political expression and also applied the standard used by the district court – whether the statute was "closely drawn" to support a "sufficiently important governmental interest."  This Court first noted that the State's interest in preventing corruption or its appearance was "sufficiently important," but concluded that interest had "little to do with Colorado's statutory distinction among contributors."  This Court then concluded that the statutory limitation distinguishing between major and minor parties was not closely drawn to advance the interest, given that there was no evidence or assertion that minor party candidates were more "corruptible" than major party candidates.  This Court further held that the classification in the Colorado statute essentially created an impermissible, basic favoritism between candidates vying for the same office.  CITE.

*District Court Decision Below*

The district court applied the following legal standards:

Prior to *Citizens United v. FEC*, 558 U.S. 310 (2010), the Supreme Court had recognized four government interests supporting restrictions on corporate political contributions: "anti-corruption, anti-distortion, dissenting-shareholder, and anti-circumvention." *United States v. Danielczyk*, 683 F.3d 611, 616 (4th Cir. 2012). "*Citizens United* preserved two of the four important government interests recognized in *Beaumont*: anti-corruption and anti-circumvention." *Id.* at 618. *Citizens United* expressly rejected the anti-distortion rationale, and disapproved of the dissenting shareholder rationale. *Id.* at 618-19.

"[T]he quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and plausibility of the justification raised." *Nixon v. Shrink Missouri Gov't PAC*, 528 U.S.377, 391 (2000). Restrictions on corporate campaign contributions are not novel. Congress and various state legislatures have barred corporations from making direct contributions to candidates for over a hundred years. *Citizens United*, 558 U.S. at 343. Given this history, a ban on corporate campaign contributions is neither novel nor implausible, and therefore the Court concludes that the City's evidentiary burden is toward the lower end of the scale. Even though this evidentiary burden may be comparatively light, the First Amendment requires something more than "mere conjecture" about the necessity for a given restriction

13

on campaign contributions. *Citizens for Clean Gov't v. City of San Diego*, 474 F.3d 647, 653 (9th Cir. 2007) (discussing *Shrink MissouriGov't*).

Upon this law, and the facts the district court concluded:

Although the proponents of § 4(f)'s ban on corporate contributions have identified two important interests that conceivably could be furthered by the ban on corporate contributions--eliminating or reducing the appearance of "pay to play" corruption or the circumvention of individual campaign contribution limits, they have not satisfied their evidentiary burden of showing that§ 4(f) is closely drawn to further those interests. The First Amendment problem with § 4(f) derives from the City Council's approach of simply taking another jurisdiction's contribution restrictions "off the rack," without meaningful consideration of whether those restrictions fit local conditions.

Unless and until the City Council develops an evidentiary record demonstrating:

> (1) a likelihood that there is a perception among Albuquerque voters that corporate campaign contributions lead to "pay to play" corruption or that corporate contributions are employed to circumvent individual contribution limits and (2) that there is a close fit between a complete ban on corporate contributions and the stated goals of reducing the perception among voters of "pay to play" corruption and preventing circumvention of individual contribution limits, §4(f)'s ban on corporate campaign contributions cannot be sustained in the face of a First Amendment challenge.

The portion of Article XIII, § 4(f) providing that "[n]o candidate shall accept a contribution in support of the candidate's campaign from any corporation, limited liability company, firm, partnership, joint stock company or similar business entity or any agent making a contribution on behalf of such a business entity" violates the First Amendment when applied to business corporations such as Giant Cab.

*Analysis*

The provisions of the City Charter that impose a blanket ban on business contributions violate the First and Fourteenth Amendments to the U.S. Constitution.  Although not reached below, Giant Cab also argued that the City's ban violated the Fourteenth Amendment's equal-protection guarantee by allowing unions, union officials, union members, non-profit groups, city employees, social-welfare organizations, special-interest groups, political action committees, and registered lobbyists to make financial contributions directly to candidates but prohibiting corporate entities from doing so.  As aptly stated by Chief Justice John Roberts, government "[v]iolates the First Amendment when it decrees that some speakers may not engage in political speech at election time, when it matters most." *Citizens United* at 385. (ROBERTS, C.J.,concurring opinion).

The trend in the recent campaign finance decisions in the Supreme Court is toward less restrictions and more freedom:

> Speech is an essential mechanism of democracy, for it is the means to hold
> officials accountable to the people. . . The right of citizens to inquire, to

15

hear, to speak, and to use information to reach consensus is a precondition to enlightened self-government and a necessary means to protect it. The First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office." (Internal citations omitted). For these reasons, political speech must prevail against laws that would suppress it whether by design or inadvertence.

*Citizens United* at 339.

    *Citizens United* was a clear turning point, not just for campaign finance law, but for all regulation of the relationship between campaign money and the political process. The government interest in the prevention of corruption is the singular basis for restriction of campaign finance spending and *Citizens United* sharply narrowed the definition of corruption by limiting it to the risk of quid pro quo transactions involving campaign contributions. This narrowing of what counts as corruption for purposes of campaign finance law constrains not only the regulation of corporate spending but all types of campaign finance spending.

    Prior to *Citizens United* the definition of corruption had steadily expanded since the Supreme Court's decision in *Buckley v. Valeo*, 424 U.S. 1 (1976), to permit a wide range of campaign finance regulation ranging from contribution limits to various restrictions on corporate and union spending to prohibitions on party soft money. *Citizens United* sharply reversed this expansion and narrowed the definition of corruption by limiting it to the risk of quid pro quo transactions involving campaign contributions.

16

Following *Citizens United*, the Court of Appeals for the Sixth Circuit, in

*Lavin v. Jon Husted,* 689 F.3d 543 (6th Cir. 2012), and the Court of Appeals for the

Second Circuit in *Green Party of Connecticut v. Garfield*, 616 F.3d 189 (2d. Cir.

2010) declared Ohio and Connecticut's respective bans on contributions to

candidates unconstitutional under the rubric of the *Citizens United* and its progeny.

The Sixth Circuit declared an Ohio statute unconstitutional that prohibited

state Attorney-General or county-prosecutor candidates from accepting campaign

contributions from Medicaid contractors or any person with an ownership interest

in a Medicaid provider. *Husted*, 689 F. 3d 543, (6th Cir. 2012):

> The Secretary's theory in support of the challenged contribution ban is…
> [it] prevents corruption. That interest, of course, is one that the courts have
> recognized as important. See, e.g., *Buckley*, 424 U.S. at 25-26, 96 S.Ct.
> 612. But to demonstrate that a contribution limit furthers an interest
> important enough to suppress "the freedoms of political expression and
> political association[,]" (internal quotation marks omitted), a state must
> do more than merely recite a general interest in preventing corruption. *Id*
> at 344.

The Sixth Circuit added that the Defendant's claim that the ban:

> [P]revents corruption, therefore, is dubious at best… What is even more
> clear, however, is that the contribution ban is not closely drawn. To be
> closely drawn, a law restricting campaign contributions must "avoid
> unnecessary abridgement of associational freedoms." *Buckley*, 424 U.S. at
> 25, 96 S. Ct. 612. Here, as discussed above, the theory behind [the
> contractor ban is that the Attorney General and county prosecutors might
> choose not to prosecute campaign contributors who commit Medicaid
> fraud. But even if we were to accept this theory at face value, the ban is
> vastly more restrictive than necessary to achieve its stated goal. *Id* at 345.

The Sixth Circuit concluded that:

The statute here restricts the First Amendment rights of nearly 100,000 Medicaid providers who do not commit fraud, based on an attenuated concern about a relative handful of providers who do. There is no avoiding the conclusion that the contribution ban… is not closely drawn. *The ban is therefore unconstitutional.* (*emphasis added*). *Id* at 345.

Likewise, the Second Circuit *Garfield* held most provisions of Connecticut's contribution and solicitation ban violated the First Amendment when it held that banning lobbyists from making campaign contributions and banning contractors and lobbyists from soliciting contributions on behalf of candidates for state office violate the First Amendment.

The Second Circuit, however, upheld Connecticut's ban on contributions by state contractors but it did so noting the extensive documented history of quid pro quo corruption that was the impetus for the ban, when it summarized the history of the statute as follows:

The [ban] . . . was passed in response to several corruption scandals in Connecticut. [*See Green Party of Conn. v. Garfield*, 648 F. Supp. 2d 298, 306-07 (D. Conn. 2009) ("Green Party II").] The most widely publicized of the scandals involved Connecticut's former governor, John Rowland. *In 2004, Rowland was accused of accepting over $100,000 worth of gifts and services from state contractors*, including vacations, flights on a private jet, and renovations to his lake cottage. Rowland accepted the gifts, it was alleged, in exchange for assisting the contractors in securing lucrative state contracts. Rowland resigned amidst the allegations, and in 2005 pleaded guilty—along with two aides and several contractors—to federal charges in connection with the scandal. Rowland was fined and sentenced to a year and a day in federal prison. (*emphasis added*) *Garfield* at 191.

Here, the City proffered no constitutionally cognizable interest in banning
contributions from Plaintiff Giant Cab and other similarly situated corporations.
*Citizens United* ruled that the only constitutionally cognizable interest in restricting
political speech and association is the interest in preventing quid-pro-quo
corruption. 130 S.Ct. at 901, 909.  Unlike in the Second Circuit case in Connecticut
no such documented history exists in Albuquerque municipal elections and there is
not a single document case involving quid-pro-quo corruption between an elected
city official and a corporate entity.  The Committee to Elect Pete Dinelli Mayor
and Amicus'[3] principal arguments are that Judge Armijo impermissibly required
the City of Albuquerque to produce evidence to substantiate its interest in the
ordinance at issue to prevent corruption.  Indeed, Dinelli devotes approximately 30
pages of his brief to hashing out all of the evidence that supports his attorney's
support of the City ordinance. Dinelli Brief at 20-49; Amicus Attorney General
Brief at 10-11.  The sum and substance of it is that there have undoubtedly been
high profile corruption cases in New Mexico, as there have been in other states.
Yet none of the proffered evidence involves corruption by and between a corporate
entity and the City of Albuquerque.  That is the missing sentence in 30 pages of
briefing by Dinelli.  And yet, even assuming that Judge Armijo required too much

---

[3] The Attorney General's Office of the State for New Mexico filed an Amicus Curiae brief in this
matter.

of an evidentiary burden on the City to show quid pro quo corruption, the ordinance still fails as it is not "closely drawn."

The ordinance is unconstitutionally broad and untailored to its asserted interest in its outright ban on corporate and small business contributions. Article XIII, § 4(f) of the Albuquerque City Charter provides:

*Ban on Contributions from Business Entities and City Contractors.*

[1]No candidate shall accept a contribution in support of the candidate's campaign from any corporation, limited liability company, firm, partnership, joint stock company or similar business entity or any agent making a contribution on behalf of such a business entity. [2] No candidate shall accept a contribution in support of the candidate's campaign from any person, other than a City employee, who at the time of the contribution is in a contractual relationship with the City to provide goods or services to the City. The remedy for an unknowing violation of this subsection shall be the return of the contribution.

Without adequate evidence in the record to make a link between corporations and City corruption, the City of Albuquerque completely bans any "corporation, limited liability company, firm, partnership, joint stock company or similar business entity" from making contributions in a mayoral election. The ordinance then also bans any "person" from contributing if that person at the time of the contribution has a contractual relationship with the city.

In implementing a "blanket ban" on corporate contributions, the City did not enact a "closely drawn" ordinance. The ordinance does not limit itself to businesses that have contracts with the city or do business with the city. With that

20

limitation, and evidence in the record of corruption within the city, perhaps the ordinance would be more closely drawn to serve an interest in preventing corruption.  But far from that scenario, what we have here is the generalized assertion of preventing corruption, and an outright ban on corporate contributions.  That ban comes into play without any evidence that it is drawn to serve its asserted generalized interest.  Bottom line:  not all corporations and small businesses engage in corrupt practices with the mayoral candidates to which they elect to make contributions.  That is the whole point.  The law must be closely drawn or it infringes on the First Amendment rights of certain entities like Giant Cab.  As such, the district court correctly ruled and struck down the ordinance as applied to Giant Cab and similarly situated businesses.

## CONCLUSION

This Court should respectfully either dismiss this appeal for lack of standing or on the merits affirm the decision of the district court.

## STATEMENT REGARDING ORAL ARGUMENT

Giant Cab does not believe that oral argument is necessary as the district court did not clearly err and Dinelli lacks standing to pursue this appeal.

Respectfully submitted,

BARNETT LAW FIRM, P.A.

*By: s/ Colin Hunter*
COLIN L. HUNTER
1905 Wyoming Blvd NE
Albuquerque, NM 87112
(505) 275-3200
colin@theblf.com
*Attorney for Appellee Giant Cab*

-and-

PARK & ASSOCIATES, LLC

*By: s/ Alfred A. Park*
ALFRED A. PARK
6100 Uptown Blvd., Suite 350
Albuquerque, NM 87110
505-246-2805
Email: apark@parklawnm.com
*Attorney for Appellee Giant Cab*

-and-

BOWLES LAW FIRM

*By: s/ Jason R. Bowles*
JASON R. BOWLES
PO Box 25186.
Albuquerque, NM 87125-0186
(505) 217-2680
jason@bowles-lawfirm.com
*Attorney for Appellee Giant Cab*

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing motion for dismissal electronically through the Court's EM/ECF system and via email at the below addresses on February 14, 2014, upon the following:

Michael J. Cadigan
3840 Masthead NE
Albuquerque, NM 87109
Tel: (505) 830-2073
cadigan@cadiganlaw.com
*Attorney for Appellant Pete Dinelli*

Gregory S. Wheeler, Assistant City Attorney
P.O. Box 2248
Albuquerque, NM 87102
Tel: 505-768-4500
gwheeler@cabq.com
*Attorney for City Clerk Amy Bailey*

Phillip Baca
Assistant Attorney General
111 Lomas Blvd NW Ste 300
Albuquerque, NM 87102
pbaca@nmag.gov
*Attorney for Amicus Curiae*

*s/ Colin Hunter*
Colin Hunter

## CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. P. 32(a)(7)(C), I certify that this brief complies

with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it is

proportionally spaced and contains 4,489 words, excluding the parts of the brief

exempted by Fed. R. App. P. 32 (a)(7)(B)(iii). I relied on my word processor to

obtain the count and it is Word for Mac. I certify that the information on this form

is true and correct to the best of my knowledge and belief

*s/ Colin Hunter*
Colin Hunter