IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | |
|---|---|
| NEAL GREENBAUM, VICTOR JURY, DALE ARMSTRONG, AND GAIL ARMSTRONG,<br>    Plaintiffs-Not Parties to Appeal,<br>and<br>ROBERT TORCH,<br>    Plaintiff-Intervenor-Not a Party to Appeal<br>and<br>GIANT CAB COMPANY,<br>    Plaintiff-Intervenor-Appellee<br><br>vs.<br><br>AMY BAILEY, Clerk of the City of Albuquerque, AND THE BOARD OF ETHICS AND CAMPAIGN PRACTICES, in their official capacities,<br>    Defendants-Not Parties to Appeal,<br>And<br>THE COMMITTEE TO ELECT PETE DINELLI MAYOR<br>    Intervenor-Appellant | Case No. 13-2176 |

## APPELLANT'S REPLY BRIEF

Appeal from the United States District Court
for the District of New Mexico
The Honorable M. Christina Armijo
United States District Court No. 1:13-cv-00426-MCA-ACT

ORAL ARGUMENT REQUESTED

Respectfully Submitted:
Committee to Elect Pete Dinelli Mayor
Michael J. Cadigan
Kristina Caffrey
*Counsel for Intervenor-Appellant*
*The Committee to Elect Pete Dinelli Mayor*
3840 Masthead NE
Albuquerque, NM 87109
(505) 830-2073

MARCH 17, 2014

# TABLE OF CONTENTS

Table of Authorities..................................................................................ii

I. THIS COURT DOES HAVE JURISDICTION OVER THE APPEAL.............1

II. THIS APPEAL DOES NOT CONCERN THE 14TH AMENDMENT'S
EQUAL PROTECTION CLAUSE...................................................................2

III. *CITIZENS UNITED* DOES NOT AFFECT THIS CASE...............................3

IV. THE COMMITTEE AND THE ATTORNEY GENERAL SHOWED
A HISTORY OF CORRUPTION, AND THE CITY IS ENTITLED TO
TAKE PROPHYLACTIC MEASURES............................................................7

V. CONCLUSION..............................................................................................10

# TABLE OF AUTHORITIES

## Supreme Court Cases

*Citizens United v. FEC*, 558 U.S. 310 (2010)..................................................3, 4

*Federal Election Commission v. Beaumont*, 539 U.S. 146 (2003).....................4, 10

*Hollingsworth v. Perry* 570 U.S. ___ (2013).......................................................1

## 10th Circuit Cases

*Riddle v. Hickenlooper*, No. 13-1108 (10th Cir. Jan. 23, 2014)..........................2, 3

## Cases from Other Circuits

*Green Party of Connecticut* 616 F.3d 189, 199 (2d Cir. 2010)..........................4, 5, 7, 8

*Lavin v. Husted*, 689 F.3d 543 (6th Cir. 2012)..................................................5, 6, 7

*Ognibene v. Parkes*, 671 F.3d 174 (2d Cir. 2011)..............................................7, 8

*Thalheimer v. City of San Diego*, 645 F.3d 1109 (9th Cir. 2011).........................4, 9, 10

*United States v. Danielczyk*, 683 F.3d 611 (4th Cir. 2012)................................4, 5

## I. THIS COURT DOES HAVE JURISDICTION OVER THE APPEAL

Appellee Giant Cab Company attacks the jurisdiction of this appeal, but Appellant the Committee to Elect Pete Dinelli has standing, and the issue is not moot.

As explained further in Appellant's Response to Giant Cab Company's Motion to Dismiss, which was briefed prior to the briefing on the merits, standing *for a defendant* only becomes an issue once a defendant seeks appellate review of a lower decision. At that point, courts must make some kind of standing analysis, but that analysis differs from the classic Article III plaintiff-standing analysis. Rather, the hallmark of defendant-appellate standing is a right of enforcement; the *Hollingsworth v. Perry* 570 U.S. ___ (2013) case cited by Appellee is distinguishable on this point. The prospective defendant-appellants in that case did not have a right of enforcement of the law in question, and therefore lacked the requisite interest in the outcome of the appeal.

Here, the Committee *does* have a right to enforce the Charter provision in question, and that right of future enforcement creates the requisite interest sufficient to support defendant-appellate standing. The fact that the Committee is an intervenor defendant does not matter, because the Committee can establish *independent* defendant-appellate standing, instead of merely piggy-backing upon another appellant.

Additionally, the case is not moot, because it falls within the exception for controversies capable of repetition yet evading review.

The Tenth Circuit should disregard the arguments on standing and proceed to adjudication of the merits of this appeal.

## II. THIS APPEAL DOES NOT CONCERN THE 14TH AMENDMENT'S EQUAL PROTECTION CLAUSE

At page 5 of the Appellee's Brief, the Appellee misleadingly suggests that this appeal involves an Equal Protection challenge. It does not. Although the original plaintiffs below attempted to include an equal protection challenge, the District Court's Findings of Fact and Conclusion of Law (Applt. Appendix page 482) explicitly declined to address Equal Protection claims (Conclusion of Law 11, "the Court will not address Plaintiffs [sic] Equal Protection challenge"). Because the final decision made no finding on Equal Protection grounds, that ground is not relevant on appeal.

The Appellee again attempts to improperly insert an equal protection issue on page 11 of its Brief when it cites to *Riddle v. Hickenlooper*, No. 13-1108 (10th Cir. Jan. 23, 2014). In that case, the Court identified the threshold issue as, "whether the 'disfavored parties' (contributors to Ms. Curry's campaign) are similarly situated to the 'favored parties' (contributors to the Republican and Democratic nominees)." *Id*. The Court concluded, "no relevant distinctions existed between an individual wanting to donate money to Kathleen Curry and another individual wanting to donate to Ms. Curry's opponent." *Id*. That is, no distinctions existed between an *individual* and *another individual*. Here, relevant distinctions *do* exist between natural individuals and corporate entities that exist because of legal fictions.

When Colorado tried to control individuals giving money to major-party candidates versus minor-party candidates, it essentially committed viewpoint discrimination. When a state commits viewpoint discrimination, it must meet a significantly higher burden. Here, there is no problem with viewpoint discrimination.

*Riddle* exclusively considered the Equal Protection Clause of the 14th Amendment and did *not* consider the First Amendment ("We reverse on the equal-protection claim; and, in light

of this decision, we decline to address the summary-judgment ruling on the First Amendment claims"). That alone makes the case inapplicable. And although the 10th Circuit may have mentioned in passing that contributions involve a "fundamental right," it still explicitly acknowledged, "In the First Amendment context, the Supreme Court has applied a less rigorous test for contribution limits, examining whether they are closely drawn to a sufficiently important governmental interest." Therefore, whether contributions are called fundamental or not, the 10th Circuit recognizes that there are less rigorous tests for contribution limits.

### III. *CITIZENS UNITED* DOES NOT AFFECT THIS CASE

Appellee again attempts to shift the analysis of this case by citing *Citizens United v. FEC*, 558 U.S. 310 (2010) and attempting to transform that case into a bigger game-changer than it actually is. In fact, *Citizens United* did almost nothing to change the analysis of contribution limits. The law at issue in *Citizens United*, 21 U.S.C. § 441(b), banned "independent expenditures" by corporate speakers. *Id.* at 318-319. The Citizens United group specifically "feared, however, that both the film and the ads would be covered by § 441b's ban on corporate-funded independent expenditures, thus subjecting the corporation to civil and criminal penalties." *Id.* at 321.

Thus, *Citizens United* concerned the expenditure rights of corporations—not their contribution rights. If the Charter Provision in question here also said, "Corporations cannot expressly advocate the election or defeat of City candidates or to broadcast electioneering communications within 30 days of a City election," an examination of the Charter Provision through the lens of *Citizens United* would be warranted. But because the Charter Provision only reaches contributions to candidates—which present the greatest threat of pay-to-play politics—*Citizens United* has no applicability here and does not change the analysis.

3

Cases decided after *Citizens United* have come to the consensus that *Citizens United* left intact the previous regime applicable to contributions. See *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1113 (2011):

> Recent Supreme Court decisions, notably *Citizens United v. FEC,* 558U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010), have once again placed the constitutionality of campaign finance reform in flux, inspiring new challenges to election laws across the country…[but] *Buckley*'s expenditure-contribution distinction continues to frame the constitutional analysis of campaign finance regulations.

*Thalheimer* also performed an in-depth analysis of the impact of *Citizens United* on the *Federal Election Commission v. Beaumont*, 539 U.S. 146 (2003) case:

> Plaintiffs argue that *Beaumont* has been overruled by *Citizens United,* and that the anti-circumvention interest is no longer valid. They base this contention on the *Beaumont* Court's citations to *Austin* [*v. Michigan State Chamber of Commerce*, 494 U.S. 664 (1990)], which partially relied on an anti-circumvention rationale to uphold a limit on corporate political expenditures…Plaintiffs fail to recognize, however, that the *Citizens United* Court rejected *Austin* for its reliance on the distinct "anti-distortion" rationale that allowed spending restrictions based on the tendency of "immense aggregations of wealth" accumulated via the corporate form to tilt the political playing field. *See Citizens United,* 130 S.Ct. at 907. The anti-distortion interest is based on an equality rationale,…whereas the anti-circumvention interest is part of the familiar anti-corruption rationale…Moreover, the *Citizens United* Court's disapproval of *Austin* came in the context of regulating political expenditures, not contributions. The Court made clear that it was not revisiting the long line of cases finding anti-corruption rationales sufficient to support such limitations.

*Id.* at 1124. Thus, "there is nothing in the explicit holdings or broad reasoning of *Citizens United* that invalidates the anti-circumvention interest in the context of limitations on direct candidate contributions." *Thalheimer* at 1125. See also *Green Party of Connecticut* 616 F.3d 189, 199 (2d Cir. 2010) ("Although the Court's campaign-finance jurisprudence may be in a state of flux (especially with regard to campaign-finance laws regulating corporations), *Beaumont* and other cases applying the closely drawn standard to contribution limits remain good law.")

The case *United States v. Danielczyk*, 683 F.3d 611 (4th Cir. 2012) directly confronted what *Citizens United* left undecided. *Citizens United* addressed the constitutionality of 2 U.S.C. §

4

441(b)(a), which originally made it unlawful for corporations to make both direct contributions to political candidates and independent expenditures on speech. *Citizens United* "struck down § 441b(a)'s prohibition against corporate independent expenditures, reasoning in part that the ban was not supported by the interest in preventing quid pro quo corruption," but *Citizens United* "left untouched § 441b(a)'s ban on direct corporate contributions." *United States v. Danielczyk*, 683 F.3d at 614.

*United States v. Danielczyk*, 683 F.3d 611, 615(4th Cir. 2012) then affirmed the constitutionality of § 441b(a)'s ban on direct corporate contributions. It also held, "*Beaumont* clearly supports the constitutionality of § 441b(a) and *Citizens United,* a case that addresses corporate independent expenditures, does not undermine *Beaumont*'s reasoning on this point." *Id*.

And even if *Citizens United* were relevant, it is precisely the risk of quid pro quo transactions at the low level of municipal government that is dangerous in this case. (See Appellee's Brief at page 16).

Appellee cites only two other cases in support of its position, but neither *Lavin v. Husted*, 689 F.3d 543 (6th Cir. 2012) nor *Green Party of Connecticut v. Garfield*, 616 F.3d 189 (2d Cir. 2010) offer it any support.

In *Lavin*, plaintiffs who wanted to make contributions in contravention of an Ohio statute brought suit when a candidate refused to accept them ("plaintiff physicians here are all Medicaid providers who attempted to contribute to Richard Cordray's 2010 campaign for reelection as Ohio Attorney General. When the campaign learned that the plaintiffs were Medicaid providers, however, it refused to accept their contributions," *Id*. at 545). The plaintiffs sued the Ohio Secretary of State. The Ohio statute made it a *crime* for state Attorney-General or county-

prosecutor candidates to accept campaign contributions from Medicaid providers or any person with an ownership interest in a Medicaid provider. *Id.*

The fact that the Ohio statute criminalized political activity alone makes *Lavin* suspect. Criminal penalties for political activity are plainly not "closely drawn." Here, Article XIII § 4(f) of the Albuquerque City Charter explicitly has a non-criminal remedy: "The remedy for an unknowing violation of this subsection shall be the return of the contribution." The Ohio statute went much further than it had to in terms of enforcement; the Albuquerque Charter went just far enough, and this distinction is critical.

The Secretary of State of Ohio did not meet his burden, arguing rather half-heartedly that "prosecutors have considerable discretion about whom to prosecute, that Medicaid fraud is a problem in Ohio (as it is elsewhere), and that, if prosecutors are permitted to accept contributions from Medicaid providers, they might choose not to prosecute contributor-providers that commit fraud." *Id.* In contrast, Appellant has explained that the Mayor and City Councilors can recommend or outright award City contracts to their favorite vendors or contractors. Such vendors and contractors are likely to be small and closely-held, and so the best way for these corporations to get on the good side of candidates is to give them campaign contributions.

The 6th Circuit did find that the Ohio law was not "closely drawn." The Appellant, however, explicitly argued in its Brief that the Albuquerque Charter provides an array of alternatives—public financing and volunteering—that more than compensate for its few restrictions.

Finally, although Appellee wishes to elevate the standard of scrutiny, *Lavin* again explicitly states, "the closely drawn standard is not a strict-scrutiny standard. Legislators have some latitude in determining how to craft limits on campaign contributions, given that, as an

empirical matter, courts are without a scalpel to probe where the contours of a minimally restrictive limit might lie." *Id.* at 548 (internal quotation marks omitted).

And as Appellee admits, the Second Circuit in *Garfield* upheld a contribution ban by state contractors. Appellant's Brief-in-Chief discussed *Garfield* extensively, and Appellant refers the Court to that discussion, rather than redundantly discussing it here again.

## IV. THE COMMITTEE AND THE ATTORNEY GENERAL SHOWED A HISTORY OF CORRUPTION, AND THE CITY IS ENTITLED TO TAKE PROPHYLACTIC MEASURES

The Appellee claims that no documented history of corruption exists in Albuquerque municipal elections and "not a single document case involving quid-pro-quo corruption" (see Appellee's brief page 19). Not only is this position false, but it is irrelevant, as the extensive history of corruption in Albuquerque municipal government more than justifies prophylactic measures to address future corruption.

The District Court's Finding of Fact #9 stated, "Martin Chavez was publically reprimanded in 2003...for accepting valuable gifts from those with an interest in city affairs."[1] Finding of Fact #10 states, "State Treasurer Robert Vigil was indicted on federal extortion charges." Finding of Fact #11 states, "A procurement scandal surrounding the construction of the Bernalillo County Metropolitan Courthouse in Albuquerque led to the indictment" of State Senator Manny Aragon and former Albuquerque Mayor Ken Schultz. This is a strong documented history of corruption.

The Appelle has made exactly the same mistake that the a party did in *Ognibene v. Parkes*, 671 F.3d 174, 188 (2d Cir. 2011): "[The challengers of New York's law] argue that *Green Party* [*of Connecticut v. Garfield*] requires evidence of recent scandals in order to justify

---

[1] This would constitute "corruption by and between a corporate entity and the City of Albuquerque," which Appellee claims on page 19 of its Brief has never occurred.

any contribution restriction, not just a ban…This is not what <u>Green Party</u> says. There is no reason to require the legislature to experience the very problem it fears before taking appropriate prophylactic measures." What *Green Party* actually did say was that circumstantial evidence was enough: "The record before us, moreover, shows that the General Assembly *had good reason to be concerned* about both the 'actuality' and the 'appearance' of corruption involving contractors…And it took *no great leap of reasoning to infer* that those scandals created a strong *appearance* of impropriety." *Green Party of Connecticut v. Garfield*, 616 F.3d at 200 (first and second italics added, third italics in original). "It is not necessary to produce evidence of actual corruption to demonstrate the sufficiently important interest in preventing the appearance of corruption." *Ognibene*, 671 F.3d at 183. Like the challengers in *Ognibene*, the Appellee here "essentially propose[s] giving every corruptor at least one chance to corrupt before anything can be done, but this dog is not entitled to a bite…There is no reason to require the legislature to experience the very problem it fears before taking appropriate prophylactic measures." *Ognibene*, 671 F.3d at 188.

The Albuquerque City Council had before it a history of publicized corruption and scandal involving two Mayors of Albuquerque and a prominent State Senator from the Albuquerque area [Senator Manny Aragon's State Senate district was in the South Valley region of Albuquerque]. Furthermore, in the District Court, Appellant offered many affidavits showing suspicious patterns of contributions in City of Albuquerque elections. This history shows that the Council had *very good* reason to be concerned about both the actuality and the appearance of corruption involving corporate entities. It then took advantage of *its right* and *its responsibility* to take prophylactic measures to prevent even further quid pro quo corruption.[2]

---

[2] The Appellee writes at page 19 of its Brief that Appellant "hash[ed] out all of the evidence that supports *his attorney's* support of the City's Ordinance" (italics added). This personal reference to former City Councilor and

The City Charter provision (it is in the Charter and is not an "ordinance," as the Appellee mistakenly identifies it) is also closely drawn. The only argument the Appellee offers in support of its argument regarding the closely drawn test is that the Charter provision is a "blanket ban" rather than a ban only on city contractors. Courts around the country have held that bans on contributions by certain entities satisfy the closely drawn test, and have recognized that limits, as opposed to bans, may not effectively combat actual and/or perceived corruption.

*Thalheimer v. City of San Diego*, 645 F.3d 1109, 1114 (9th Cir. 2011) upheld a very similar municipal enactment. San Diego's "organizational contribution" ban, "ECCO § 27.2950, prohibits 'any person other than an individual' from contributing to a candidate or candidate-controlled committee.'" The ordinance defines "person" as including "any individual, proprietorship, firm, partnership, joint venture, syndicate, business trust, company, corporation, association, committee, labor union, or any other organization or group of persons acting in concert." *Id.* "The effect of the provision is to bar contributions to candidates from all organizations and other non-individual entities." *Id.*

The Ninth Circuit found the law closely drawn enough:

> [Challengers] seek to distinguish *Beaumont* by noting that even though the [Supreme] Court upheld a total ban on corporate contributions, its tailoring analysis took into account that corporations retained the option of establishing political action committees that could make contributions to candidates…By contrast, the relevant ECCO provisions ban all non-individual contributions, so there is no PAC alternative. While this is a legitimate distinction, the *Beaumont* Court also stated that a 'ban on direct corporate contributions leaves individual members of corporations free to make their own contributions, and deprives the public of little or no material information.' *Id.* at 161 n. 8, 123 S.Ct. 2200.

---

Counsel for Appellant Michael Cadigan is not necessary, and it is inappropriately inflammatory. Appellant reminds the Appellee and the Court that the Charter provision was a direct ballot initiative that was overwhelmingly approved by the citizens of the City of Albuquerque. It is not just one person's interest that drives this appeal; it is the interest of every single citizen of Albuquerque in a responsive and truly representative government.

Implicit in both the Supreme Court's *Beaumont* analysis and the Ninth Circuit's analysis is examination of the availability of alternatives. That is, if the law leaves other avenues of political expression open, the law is more likely to qualify as "closely drawn." Indeed, the Ninth Circuit wrote, "importantly, San Diego's regulations allow non-individual entities to make unlimited independent expenditures, and with ECCO § 27.2936 enjoined, they can also make unlimited contributions to independent committees that can be used to fund expenditures supporting or opposing candidates." *Thalheimer* 645 F.3d at 1125.

Additionally, as shown by Councilor Cadigan's discussions with City Attorney Bob White and Chief Administrative Officer Bruce Perlman at the City Council meeting regarding how the ban would apply to corporations and their constituents, reaching contractors and prospective contractors was a clear intention of Article XIII § 4(f).

Again, Appellant discussed the closely drawn nature of the Charter Provision extensively in its Brief-in-Chief, and Appellee has raised no new arguments in response. As such, Appellant directs the Court's attention to its Brief-in-Chief.

## V. CONCLUSION

The Appellee's Response Brief raises no persuasive arguments and does nothing to detract from the Appellant's strong arguments that the District Court placed an unreasonably high and unnecessarily specific burden on the defenders of Article XIII § 4(f), that the District Court ignored and overlooked the plethora of evidence offered by the defenders, that the City of Albuquerque has a fundamental interest in preventing corruption, that Article XIII § 4(f) is closely drawn, and that Appellant has appropriate standing to defend Article XIII § 4(f) on appeal. The 10th Circuit should recognize the standing of Appellant and then should reverse the decision of the District Court.

Appellate Case: 13-2176     Document: 01019218995     Date Filed: 03/17/2014     Page: 14

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of March, 2014, I served the required number of true and accurate copies of Appellant's Reply Brief on the Clerk of the United States Court of Appeals for the Tenth Circuit and opposing counsel at the following addresses, by

Colin Lambert Hunter
Barnett Law Firm, P.A.
*Counsel for Appellee*
1905 Wyoming Blvd. NE
Albuquerque, NM 87112
(505) 275-3200
(505) 275-3837
colinhunterlaw@gmail.com

Alfred A. Park
Park & Associates, LLC
*Counsel for Appellee*
6100 Uptown Blvd., Suite 350
Albuquerque, NM 87110
(505) 246-2805
(505) 246-2806
apark@parklawnm.com

Jason Bowles
Bowles & Crow
*Counsel for Appellee*
P.O. Box 25186
Albuquerque, NM 87125
Jason@bowles-lawfirm.com

# CERTIFICATE OF COMPLIANCE
# REGARDING ELECTRONIC SUBMISSION

Pursuant to Emergency General Order filed October 4, 2004, as amended May 23, 2005, I hereby certify that (1) all required privacy redactions have been made and, with the exception of those redactions, every document submitted in Digital Form or scanned PDF format is an exact copy of the written document filed with the Clerk, and (2) the digital submission has been scanned for viruses with the most recent version of AVG Antivirus Business Edition 2013, and, according to the program, is free of viruses. I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

/s/ Kristina Caffrey
Michael J. Cadigan
Kristina Caffrey
*Counsel for The Committee to Elect Pete Dinelli Mayor*
3840 Masthead NE
Albuquerque, NM 87109
(505) 830-2073
(505) 830-2385 (fax)
cadigan@cadiganlaw.com
kristina@cadiganlaw.com